UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LAURALA K. WHITE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:23-CV-539-ACL |
| ) | |
| MARTIN O'MALLEY, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM

Plaintiff Laurala K. White brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite White's severe impairments, she was not disabled as she was capable of performing work existing in substantial numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

### I. Procedural History

White filed her applications for benefits on March 9, 2020. (Tr. 248-49, 255-60.) She

claimed she became unable to work on November 28, 2018, due to bipolar disorder; anxiety; panic attacks; lumbar spinal stenosis; degenerative joint disease of the lumbar, thoracic, and cervical spine; and fibromyalgia.  (Tr. 277.)   Her insured status under Title II of the Act expired on March 31, 2020.  (Tr. 14.)   White was 46 years of age at her alleged onset of disability date.  (Tr. 27.)   Her applications were denied initially.  (Tr. 145-54.)   White's claims were denied by an ALJ on April 8, 2022.  (Tr. 12-29.)   On March 3, 2023, the Appeals Council denied White's claim for review.  (Tr. 1-4.)   Thus, the decision of the ALJ stands as the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, White argues that the ALJ "failed to fully and fairly develop the record." (Doc. 21 at 4.)

## II. The ALJ's Determination

The ALJ first found that White met the insured status requirements of the Social Security Act through March 31, 2020.  (Tr. 14.)   He stated that White has not engaged in substantial gainful activity since her alleged onset date.  *Id.*   In addition, the ALJ concluded that White had the following severe impairments: fibromyalgia, degenerative changes to the cervical, thoracic, and lumbar spine, obesity, bipolar disorder, anxiety, depression, and history of polysubstance abuse.  (Tr. 15.)   The ALJ found that White did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  *Id.*

As to White's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can frequently climb ramps and stairs, occasionally climb ladders, ropes, or scaffolds, and occasionally stoop, kneel, crouch, and crawl.  She can frequently

Page **2** of **15**

> handle, finger, and feel using the bilateral upper extremities. She must avoid concentrated exposure to extreme cold, extreme heat, wetness, vibration, and hazards such as moving machinery and unprotected heights. She can perform only jobs that can be learned in 30 days or less, can make only simple work-related decisions, and can tolerate only occasional contact with co-workers, supervisors, and the general public.

(Tr. 19.)

The ALJ found that White has no past relevant work, but there were jobs that exist in significant numbers in the national economy that White could perform. (Tr. 27.) The ALJ therefore concluded that White was not under a disability, as defined in the Social Security Act, from November 28, 2018, through the date of the decision. (Tr. 28.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on March 9, 2020, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income protectively filed on March 9, 2020, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 28-29.)

### III.   Applicable Law

**III.A.  Standard of Review**

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This

"substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).  "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."  *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).  The Court must also consider any evidence which fairly detracts from the Commissioner's decision.  *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).  However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v.*

*Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).  "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."  *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).  Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

**III.B.  Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country."  42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner

looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements"

of the claimant's past relevant work.  20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).  "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations."  *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).  The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. § 416.945(a)(3).  The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id*.  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.  *Id*. § 416.920(a)(4)(iv).

  Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.  *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).  The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.  20 C.F.R. § 416.920(a)(4)(v).  At Step Five, even though

the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### IV. Discussion

As an initial matter, the Court notes that White's insured status is relevant in this case. White alleged an onset of disability date of November 28, 2018. Her insured status expired on March 31, 2020. To be entitled to DIB benefits, White must demonstrate she was disabled prior to March 31, 2020. *See* 20 C.F.R. § 404.130. The relevant time period for White's SSI claim is November 28, 2018, through April 8, 2022 (the date of the ALJ's decision).

In her single claim, White argues that the ALJ erred in failing to fully and fairly develop the record as to White's RFC. Specifically, she contends that the RFC assessment is not supported by medical evidence that addresses White's ability to function in the workplace during the entire period of disability.

A claimant's RFC is the most she can do despite her physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). It is the ALJ's responsibility to determine a claimant's RFC by evaluating all medical and non-medical evidence of record. 20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946. Some medical evidence must support the ALJ's RFC finding, but there is no requirement that the evidence take the form of a specific medical opinion from a claimant's physician. *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012); *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). "The determination of a claimant's RFC during an administrative hearing is the ALJ's sole responsibility and is distinct from a medical source's opinion." *Wallenbrock v. Saul*, No. 4:20-CV-00182-SRC, 2021 WL 1143908, at *6 (E.D. Mo. Mar. 25, 2021) (citing *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2013)).

The ALJ found that White had the physical[1] RFC to perform a reduced range of light work.  (Tr. 19.)   In making this determination, the ALJ evaluated the medical opinion evidence.  White argues that the ALJ erred in relying upon "outdated" medical opinions.  (Doc. 21 at 9.)

A "medical opinion" is a statement from a medical source about what an individual can still do despite her impairments, and includes limitations or restrictions about the ability to perform physical, mental, sensory, and/or environmental demands of work.  20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).  Under the revised Social Security regulations,[2] the agency "[w]ill not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(b)(2).  Instead, the ALJ must assess the persuasiveness of all medical opinions and prior administrative medical findings[3] using a number of factors, including 1) the supportability of the opinion with objective medical evidence and explanations; 2) the consistency of the opinion with evidence from other medical and nonmedical sources; 3) the relationship of the provider to the claimant, including the length, nature and frequency of treatment; 4) the specialization of the provider; and 5) other factors, including the source's familiarity with the Social Security guidelines.  See 20 C.F.R. § 404.1520c.  The ALJ must explain how they considered the factors of supportability and

---

[1] Although the ALJ also found White had severe mental impairments, White does not challenge the ALJ's findings regarding her mental impairments.  The Court will therefore focus its discussion on White's physical impairments.

[2] The new regulations are applicable to White's claims because she filed her appeal after March 27, 2017.  See 20 C.F.R. §§ 404.1520c, 416.920c.

[3] "Prior administrative medical findings" are findings, other than the ultimate determination on whether a claimant is disabled, about medical issues made by the consultants at a prior level of review in the claimant's current claim based on their review of the evidence.  81 Fed. Reg. at 62,564; 20 C.F.R. § 404.1513(a)(5) (2017).

consistency in their decisions but are not statutorily required to discuss the other factors. 20 C.F.R. § 404.1520c(b)(2).

White argues that the ALJ erred in relying on the outdated opinions of two state agency consultants: James Weiss, M.D., and Donna McCall, D.O.

On December 8, 2020, Dr. Weiss completed a Physical Residual Functional Capacity Assessment. (Tr. 87-90.) Dr. Weiss expressed the opinion that White could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand or walk a total of 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday due to her cervical and lumbar degenerative disc disease status post-surgical procedures. (Tr. 87-88.) He found White could frequently climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; and occasionally stoop, kneel, crouch, and crawl. *Id.* Finally, Dr. Weiss found that White should avoid concentrated exposure to extreme cold, extreme heat, wetness, vibration, and hazards. (Tr. 89-90.)

As an explanation for his opinions, Dr. Weiss first discussed the objective medical evidence. (Tr. 90.) He summarized that imaging as follows: a September 2018 MRI of the left shoulder revealed mild degenerative joint disease of the AC joint; an October 2018 MRI of the cervical spine revealed a posterior disc herniation at C6-7 producing mild central canal stenosis and existing left C7 nerve root impingement; an April 2019 MRI of the lumbar spine showed mild multilevel degenerative disc disease with multi-level facet arthropathy and mild bilateral neural foraminal stenosis at L4-5; and a March 2020 MRI of the lumbar spine revealing significant compression of L5-S1 with mass effect of the right S1 nerve root at L5-S1. *Id.* Dr. Weiss next noted that White underwent the following surgical procedures: an anterior cervical discectomy and fusion with decompression in November 2018 (Tr. 438); a left L4-5 laminectomy with partial facetectomy and left L5-S1 laminectomy with partial facetectomy in

July 2019 (Tr. 445); and a right L5-S1 laminectomy with partial facetectomy in June 2020 (Tr. 722).  (Tr. 90.)

Dr. Weiss stated that White underwent a consultative physical examination at the request of the state agency on November 11, 2020.  (Tr. 90, 772-77.)  White complained of disabling joint and muscle pain from lumbar spine stenosis, degenerative joint disease of the spine, and fibromyalgia.  (Tr. 90, 772.)  On examination, Rachel Dibooglu, FNP, noted White's gait was steady, with an even, smooth stride; she was able to sit and rise from the chair and exam table, walk on her toes and heels bilaterally, and squat 90 degrees.  (Tr. 90, 774-75.)  Ms. Dibooglu noted tenderness in the bilateral shoulders with full range of motion.  (Tr. 90, 774.)  White was able to make a mildly weak closed fist and fully extend her fingers bilaterally, and her fine and gross motor movements were fully intact bilaterally.  (Tr. 90, 774-75.)  She was able to pick up a coin and paperclip and grasp a doorknob.  *Id.*  Ms. Dibooglu noted tenderness in the right knee with pain in the bilateral knees and range of motion decreased to 120/150.  (Tr. 90, 775.)  White's lumbar spine range of motion was decreased to 70/90 with mild tenderness; no tenderness of the neck was noted but cervical extension was decreased to 50/60.  *Id.*  White's straight leg raise testing was negative sitting and supine, and her sensation and reflexes were normal.  *Id.*

On April 24, 2021, Dr. McCall authored a Physical Residual Functional Capacity, in which she found the same limitations as Dr. Weiss.  (Tr. 128-29.)  In addition to the medical records summarized by Dr. Weiss, Dr. McCall cited the following newer evidence:  White presented to the emergency room in November 2020, with complaints of back pain.  (Tr. 129.)  On examination, bilateral paraspinous muscular tenderness, with spasm was noted; but she had full strength of the lower extremities, and a lumbar CT scan indicated no acute findings.  *Id.*

The ALJ found Dr. Weiss' opinion persuasive, noting that it was "supported by Dr. Weiss' review and consistent with the medical evidence of record." (Tr. 26.) The ALJ continued that, "[h]owever, out of an abundance of caution and in giving the claimant the full benefit of the doubt," White was additionally limited to frequently handling, fingering, and feeling. *Id.* The ALJ noted that, because Dr. McCall affirmed the evaluation of Dr. Weiss, the same analysis applies to her opinions. *Id.*

White argues that, in evaluating the opinions of Drs. Weiss and McCall, the ALJ failed to recognize that they did not have the benefit of knowing that White would subsequently require another surgery at L4-5 and L5-S1. Specifically, White notes that she underwent right L4-5 and L5-S1 laminectomy with partial facetectomy to treat lumbar stenosis on July 23, 2021. (Tr. 1032.)

The ALJ acknowledged that White underwent "a minimally invasive" right L5-S1 laminectomy with partial facetectomy on July 23, 2021. (Tr. 23, 1054.) White saw surgeon Troy H. Caron, D.O. on July 1, 2021, for complaints of low back pain after moving a sofa in November 2020. (Tr. 1052.) On examination, she appeared in no acute distress and had full range of motion in her upper and lower extremities. (Tr. 1054.) White underwent an x-ray of the lumbar spine, which revealed minimal osteoarthritis of L1 and L2. (Tr. 1056.) Dr. Caron stated that, because White was having right-sided symptoms now, he would perform a right L4-5 and L5-S1 minimally invasive decompression. (Tr. 1054.)

The fact that White received additional treatment following Dr. Weiss' and Dr. McCall's opinions does not invalidate their opinions or render their opinions unreliable. The ALJ was aware of White's subsequent treatment and surgery because this evidence was in the record before the ALJ and the ALJ specifically referred to the evidence in his opinion. In assessing

White's functional limitations and RFC, the ALJ considered not only the opinions of Drs. Weiss and McCall, but also the medical records, including Dr. Caron's treatment notes. (Tr. 20-27.)

White testified that she was able to walk or stand for only about five minutes due to lower back and knee pain; sit for only 45 minutes to an hour and a half; and lift no more than 20 pounds. (Tr. 56.) The ALJ found that, despite the fact that White underwent "multiple spinal surgeries during the relevant period," the evidence did not support her allegations of disability and instead "has shown that she had full range of motion in her upper and lower extremities and full strength." (Tr. 20.) The ALJ noted that White reported she was "overdoing it" by walking in Wal-Mart and picking up her dog two weeks after her lumbar surgery in July 2019. (Tr. 21, 445.) The ALJ pointed out that White did not follow-up with her twelve-week post-operative appointment, and then reported an exacerbation of lumbar pain in December of 2019, after doing "a lot of heaving lifting of boxes." (Tr. 21, 449.) White's surgeon, Dr. Caron, imposed a temporary lifting restriction of no more than ten pounds immediately following her June 2020 laminectomy. (Tr. 27, 727.) By September 2020, however, Dr. Caron provided no limitations. (Tr. 27, 955.) At that time, White reported she was doing well and had no pain. *Id.* White had full strength and no pain with range of motion in her hips, knees, or ankles. *Id.* At a primary care appointment for left elbow pain in October 2021, White had a normal gait and appeared in no distress. (Tr. 23, 1350.)

Ultimately, the ALJ concluded that White possessed greater limitations than those opined by Drs. Weiss and McCall, finding White was limited to frequently handling, fingering, and feeling. (Tr. 26.) Because Dr. Weiss' and Dr. McCall's opinions were sufficiently current and supported by their review of the record, the Court finds the ALJ did not err in concluding their opinions were generally persuasive in determining White's physical RFC.

The ALJ "has a duty to fully and fairly develop the evidentiary record." *Byes v. Astrue*, 687 F.3d 913, 915-16 (8th Cir. 2012). In some cases, the duty to develop the record requires the ALJ to obtain medical evidence, such as a consultative examination of the claimant, before rendering a decision. *See* 20 C.F.R. § 404.1519a(b). "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). "[I]t is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000) (quoting *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984)).

Here, the ALJ had the opinions of two State-agency non-examining consultants, offered in December of 2020 and April of 2021, well within the relevant time period. Although these consultants did not have the benefit of reviewing the notes regarding White's July 2021 right L5-S1 laminectomy when offering their opinions, the ALJ considered this surgery, and found it did not support a finding that White's condition was disabling during the relevant period.

Furthermore, in assessing White's functional limitations and RFC, the ALJ considered the records of surgeon Dr. Caron and consultative examiner Ms. Dibooglu. The ALJ acknowledged that White experienced pain due to her spinal impairments and fibromyalgia but noted that White's providers consistently documented full range of motion and strength in the bilateral extremities, and a normal gait. Additionally, White reported engaging in activities such as lifting heavy boxes during the relevant period despite her allegations of disabling back pain.

Given the evidence discussed above, this is not a case in which a crucial issue was undeveloped, and it was not necessary for the ALJ to obtain additional medical opinions

regarding her conditions. Instead, the ALJ properly considered White's medical records, the medical opinion evidence, White's testimony, and the other evidence in the record in determining her physical RFC. This evidence is supportive of the ability to perform a limited range of light work. Thus, the Court finds substantial evidence on the record supported the ALJ's RFC determination.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.
.

                /s/ *Abbie Crites-Leoni*
                ABBIE CRITES-LEONI
                UNITED STATES MAGISTRATE JUDGE

Dated this 16th day of September, 2024.